UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JASON FLORENCIO ROBERTS,

    PLAINTIFF,

v.

SAM'S WEST, INC. D/B/A SAM'S CLUB, AND TRANS UNION LLC,

    DEFENDANTS.

Civil Case No.: 4:23-cv-54

JURY DEMAND

## COMPLAINT

Plaintiff Jason Florencio Roberts ("Mr. Roberts or "Plaintiff"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information, belief, and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges against Defendants Sam's West, Inc. d/b/a Sam's Club ("Sam's Club") and Trans Union LLC ("Trans Union") (collectively referred to as "Defendants") as follows:

## PRELIMINARY STATEMENT

1. This is an action for an actual, statutory, and punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq*. ("Fair Credit Reporting Act" or "FCRA").

2. Congress made the following findings when it enacted the FCRA:

(1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

(2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

1

>(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.
>
>(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

  3. The plain language of the FCRA prohibits a person from obtaining a consumer report from a consumer reporting agency ("CRA") without a permissible purpose. 15 U.S.C. § 1681b(f). *See Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1214 (11th Cir. 2019).

  4. The term "user" is undefined by the FCRA. However, anyone receiving a consumer report and applying it to a consumer is a user and must comply with the FCRA. *Zeller v. Samia*, 758 F. Supp. 775, 780 (D. Mass. 1991); *See also Kingery v. Quicken Loans, Inc.*, 629 Fed. Appx. 509, 513 (4th Cir. 2015) (defining "use" to be when a lender employs the consumer's score to achieve a purpose or objective); *Yohay v. City of Alexandria Employees Credit Union*, 827 F.2d 967, 973 (4th Cir. 1987).

5. A CRA may furnish a consumer report to a user if it reasonably believes the user intends to use the information in connection with the extension of credit, employment, insurance, license or government benefit or existing credit obligation. 15 U.S.C. § 1681b(a)(3)(A-E).

6. A user may obtain a consumer report if it has a "legitimate business need for the information" for: (1) a "business transaction initiated by the consumer;" or (2) to review an account to determine whether the consumer continues to meet the terms of the account." 15 U.S.C § 1681b(a)(3)(F)(i-ii). In other words, a user may obtain a consumer report only if it has a permissible purpose enumerated under the FCRA.

7. However,

> [a] person shall not use or obtain a consumer report for any purpose unless ... (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b(f). In other words, a user may not obtain a consumer report from a CRA when it does not have a permissible purpose.

8. The disclosure of consumers' credit files to third parties is known as an "inquiry" and inquiries are recorded by CRAs as a request for the consumer's credit history and stored in the consumer's file.

9. Inquiries are items of information contained in a consumer's "file," as that term is defined by 15 U.S.C. § 1681(a)(g).

10. Trans Union records and retain inquiries in consumers' files.

11. Trans Union categorizes inquiries as either a "hard" inquiry or a "soft inquiry."

12. Hard inquiries are shared with third parties.

13. Hard inquiries reduce a consumer's credit score.

14. The number of hard inquiries in a twelve-month period may be a reason or the sole reasons for a credit denial.

15. The CRA Defendants are required by the FCRA to reinvestigate the accuracy of "any item of information" that is disputed by a consumer. 15 U.S.C. § 1681i(a)(1)(A).

16. As part of any reinvestigation, Trans Union must notify the source of the disputed information about the dispute and provide the source with all relevant information provided by the consumer with the dispute. 15 U.S.C. § 1681i(a)(2)(A).

17. Despite this requirement, Trans Union does not reinvestigate inquiries disputed by consumers, including Mr. Roberts.

18. An "inquiry" on a consumer report is the identification of a person or business that obtained a consumer report from a CRA pertaining to the consumer in connection with a credit or other transaction involving the consumer.

19. Like other items on a consumer report (commonly known as a "credit report"), inquiry information is sometimes inaccurate. Yet, Trans Union ignores its legal obligation to delete or reinvestigate disputed inquiries.

20. Trans Union has long been aware of its obligations to delete or reinvestigate disputed inquiries.

21. Trans Union had the benefit of plain, unambiguous statutory language requiring a reasonable reinvestigation of "the completeness or accuracy of *any item* of information contained in a consumer's file" that is disputed by that consumer. 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

22. Regulatory guidance from the Federal Trade Commission ("FTC") further elucidated Trans Union's duty to delete or reinvestigate disputed inquiries. For example:

> When a CRA receives a dispute from a consumer alleging that an inquiry that appears in his/her file was not made by a person who had a permissible purpose for obtaining the consumer report, and those allegations are supported by the CRA investigation, the CRA has two options. It may either delete the inquiry as inaccurate, or inaccurate or amend the file to make the item "complete" by reflecting clearly that the inquiry was generated by a party who did not have a permissible purpose to obtain a consumer report on the consumer.

*See* Federal Trade Commission, 40 Years of Experience with The Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations 77. (2011).[1]

23.  The Eleventh Circuit Court of Appeals has held CRA, like Trans Union, violates §1681i(a)(1) if it fails to do a reasonable reinvestigation when a consumer disputes "information contained in his file." *Collins v. Experian Information Solutions, Inc.*, 775, F.3d 1330, 1335 (11th Cir. 2015) ("[a] file is simply the information retained by the consumer reporting agency.").

24.  Other Courts of Appeals have for many years also instructed CRAs, including Trans Union, to reinvestigate any item that it reports and that a consumer disputes, regardless of the context. *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-13 (3d Cir. 2010) (OFAC terrorist alerts that CRA keeps off site with another company but placed on its credit reports are in the consumer file and must be reinvestigated); *Morris v. Equifax Information Services, LLC*, 457 F.3d 460, 466-68 (5th Cir. 2006) (Equifax must reinvestigate store charge account that is on file kept by one of Equifax's affiliates but which can be sold by Equifax in its credit reports); *Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986); *Bryant v. TRW, Inc.*, 689 F.2d 72 (6th Cir. 1982); *Dennis v. BEH-1, LLC*, 520 F.3d 1067 (9th Cir. 2008).

25.  Indeed:

> More than simply comporting with the plain language of the statute, [requiring reinvestigation of inquiry disputes] best serves to advance the purpose of FCRA's

---

[1] https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf ("40 Year Staff Report") (last visited on January 6, 2023).

reinvestigation requirements—ensuring the accuracy of the information used by creditors to determine a consumer's creditworthiness. As the Eleventh Circuit has noted, the standard of accuracy imposed by the FCRA "should be interpreted in an evenhanded manner toward the interests of both consumers and potential creditors in fair and accurate credit reporting." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991). The interests of consumers and potential creditors are best served by deletion of hard inquiries that Equifax itself admits "misstate[ ]" the consumer's credit history. Consumer's credit scores are negatively impacted by fraudulent or inaccurate credit inquiries, and creditors are provided with an inaccurate portrait of the consumer's credit history. The only entity that benefits is Equifax, which does not have to expend resources reinvestigating disputed credit inquiries.

*Steed v. Equifax Information Services, LLC*, No. 1:14-cv-0437-SCJ, 2016 WL 7888039, at *4 (N.D. Ga. Aug. 31, 2016).

26. At least two consumer class actions related to a CRA's pattern and practice of failing to delete or reinvestigate disputed inquiries have been certified after *Steed*. *See Rivera v. Equifax Info. Serv., LLC*, 341. F.R.D. 328, 348 (N.D. Ga. 2022); *Norman v. Trans Union, LLC*, 479 F.Supp.3d 98, 142 (E.D. Pa. Aug. 14, 2020) (Finding, "Trans Union has adopted a uniform policy as to a category of disputes based upon its interpretation of § 1681i(a). But its interpretation is an aggressive one given the language of the statute and the Third Circuit's decisions in this area. Plaintiff has stated a valid cause of action and has identified significant common issues for a class of consumers, with the result that the motion to certify will be granted."); *See also Hines v. Equifax Info. Services, LLC*, 19CV6701RPKRER, 2022 WL 2841909, at *1 (E.D.N.Y. July 16, 2022) (Magistrate's Report and Recommendation recommending in part and denying in part class certification; objections to R&R currently pending before the district judge).

27. Trans Union is aware of the *Hines, Norman, Rivera* and *Steed* opinions.

28. Trans Union has been sued thousands of times wherein an allegation was made that it violated the FCRA.

6

29. According to the Better Business Bureau ("BBB"), Sam's Club has a 1.1 star rating out of 5 based on customer reviews.[2] Also, according to the BBB, it has received 482 complaints in the last twelve months from Sam's Club's customers. *Id*. Many of the complaints concern or relate to unauthorized transactions or charges made at or by Sam's Club.[3]

30. "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA).

31. Upon information and belief, each defendant maintains records concerning lawsuits previously filed against them, including the number and types of claims.

## JURISDICTION & VENUE

32. This Court has jurisdiction pursuant to 15 U.S.C. §§ 1681p and 28 U.S.C § 1331.

33. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

34. Plaintiff is an adult individual and residing in this judicial district. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

35. Defendant Sam's Club is an Arkansas corporation and does business in this judicial district. Sam's Club's principal place of business is located at 2101 SE Simple Savings Drive

---

[2] *See* https://www.bbb.org/us/ar/bentonville/profile/buying-clubs/sams-club-0935-8210 Last visited January 6, 2023.

[3] *See* https://www.bbb.org/us/ar/bentonville/profile/buying-clubs/sams-club-0935-8210/complaints?page=2&type=billing Last visited January 6, 2023.

Bentonville, AR 72716-0745. Sam's Club is a "person" and a ""user" of consumer credit and other financial information, as said terms are defined and contemplated by the FCRA.

36. Defendant Trans Union is a Delaware corporation with its principal place of business located at 555 W Adams St., Chicago, Illinois 60661, and does business in this judicial district. Trans Union is a CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

## FACTUAL ALLEGATIONS

*Plaintiff's Experience with Defendant Sam's Club*

37. On January 10, 2021, Plaintiff went to Sam's Club located at 19091 I-45, Shenandoah, Texas.

38. Mr. Roberts purchased items from Sam's Club.

39. During the checkout process, a representative of Sam's Club, asked Mr. Roberts if he was interested in applying for a credit card through Sam's Club with Synchrony.

40. Mr. Roberts declined Sam's Club's offer.

41. Mr. Roberts paid for his items and left the store.

42. Mr. Roberts then received a credit alert notifying him that his credit score dropped because of a hard inquiry made by "SYNCB/SAMS" on January 10, 2021.

43. As a result of Sam's Club request for Plaintiff's credit report, an unauthorized inquiry appeared on Mr. Roberts' Trans Union report.

44. Plaintiff did not give Sam's Club permission to submit a credit application or cause the inquiry to be made by Synchrony Bank on or about January 10, 2021.

45. After learning Sam's Club pulled his credit report, Mr. Roberts disputed the unauthorized inquiry directly to Sam's Club.

46. Mr. Roberts also reported the unauthorized inquiry to the Shenandoah Police Department.

47. The Shenandoah Police Department investigated the disputed inquiry.

48. In connection with its investigation, the Shenandoah Police Department contacted Sam's Club.

49. The Shenandoah Police Department obtained information from Sam's Club that one of its employees submitted a credit application in Mr. Robert's name and without his consent or knowledge.

50. On or about January 15, 2021, Synchrony Bank generated a letter to Mr. Roberts.

51. In the letter, Synchrony Bank notified Mr. Roberts it received a request for a credit account with Sam's Club. Synchrony Bank also stated:

> To protect your identity, we checked data sources to verify information on your application. These databases may include, but are not limited to, public records, phone directories or social security databases. Additionally, our customer service agent might have asked you to verify your identity. Unfortunately, based on the results of those checks, we were unable to confirm your identity with enough confidence to approve your application at this time.

52. Notwithstanding, the unauthorized inquiry remained on Mr. Roberts's Trans Union credit file.

### *Plaintiff's Experience with Defendant Trans Union*
### *March 1, 2021 Dispute to Trans Union*

53. On March 1, 2021, Mr. Roberts drafted a dispute letter to Trans Union and included his full name, social, date of birth and address. Plaintiff stated to Trans Union the Syncrb/Sams

9

inquiry did not belong to him and that he was a victim of fraud. He asked Trans Union to forward his dispute letter to anyone who provided the disputed information and to send him the steps Trans Union took to investigate his dispute. Mr. Robert's also asked Trans Union to send him his entire file.

54. Mr. Roberts traveled to the post office and mailed Trans Union the dispute letter by certified mail return receipt requested at a cost of $ 7.00.

55. On March 12, 2021, Trans Union received his dispute.

56. In response, Trans Union did not delete the disputed inquiry.

57. Similarly, Trans Union did not reinvestigate the disputed inquiry.

58. Trans Union did not send Plaintiff the dispute results, steps it took to investigate his dispute, his credit file or otherwise respond to Plaintiff.

59. The disputed inquiry remained on Plaintiff's Trans Union file.

### *Plaintiff's June 10, 2021 Dispute to Trans Union*

60. On or about June 10, 2021, Mr. Roberts wrote a second dispute letter concerning the inquiry to Trans Union. In support, Mr. Roberts included his full name, social and date of birth. He disputed the subject inquiry as a fraudulent inquiry. He also notified Trans Union that the inquiry was made without his authorization, knowledge or consent. Mr. Roberts requested Trans Union to delete the inquiry or provide Synchrony Bank and Sam's Club with a copy of his dispute letter to confirm the validity of his disputes. Mr. Roberts also asked Trans Union to send him the steps Trans Union undertook while investigating his dispute and his entire file without his Social Security number.

61. On June 10, 2021, Mr. Roberts traveled to the post office and mailed his dispute to Trans Union by certified mail return receipt requested at a cost of $ 7.00.

62. On June 18, 2021, Trans Union received Mr. Robert's dispute.

63. In response, Trans Union did not delete the disputed inquiry.

64. Similarly, Trans Union did not reinvestigate the disputed inquiry.

65. Trans Union did not send Plaintiff the dispute results, steps it took to investigate his dispute, his credit file or otherwise respond to Plaintiff.

66. The disputed inquiry remained on Plaintiff's Trans Union file.

### *Plaintiff's August 24, 2021 Dispute to Trans Union*

67. On August 24, 2021, Plaintiff wrote a third dispute letter to Trans Union. Plaintiff included his full name, social and date of birth. Plaintiff disputed the subject inquiry as a fraudulent inquiry and made without his knowledge or permission. Mr. Roberts also notified Trans Union the inquiry was made after a Sam's Club employee applied for credit in his name without his authorization and was fired because of it. Mr. Roberts also notified Trans Union that he reported the incident to the Shenandoah Police Department and provided the case number and officer's name who was investigating his fraud claim. Mr. Roberts asked Trans Union to contact the police officer for more information about his dispute, delete the inquiry or contact Synchrony Bank and Sam's Club with a copy of his dispute letter and to confirm his fraud claim. Mr. Roberts also asked Trans Union to send him the steps it took while investigating his dispute and his credit file.

68. On August 24, 2021, Mr. Roberts traveled to the post office and mailed his dispute to Trans Union by certified mail return receipt requested at a cost of $ 7.00.

69. On August 30, 2021, Trans Union received Mr. Robert's dispute.

70. In response, Trans Union did not delete the disputed inquiry.

71. Similarly, Trans Union did not reinvestigate the disputed inquiry.

72. Trans Union did not send Plaintiff the dispute results, steps it took to investigate his dispute, his credit file or otherwise respond to Plaintiff.

73. The disputed inquiry remained on Plaintiff's Trans Union file.

74. Trans Union did not perform an investigation of Plaintiff's disputes described above.

75. In the alternative, Trans Union did not review all relevant information in connection with any of Plaintiff's disputes.

76. Trans Union did not contact any third parties, such as Sam's Club, Synchrony Bank or the Shenandoah Police Department. Had it, Trans Union would have validated Plaintiff's fraud claim and presumably would have deleted the hard inquiry from Plaintiff's file.

77. Despite Plaintiff's exhaustive efforts to date, Defendants have nonetheless deliberately, willfully, intentionally, recklessly, and negligently repeatedly failed to comply with the FCRA.

78. As of result of the defendants' conduct, Plaintiff has suffered unique and distinct actual damages in the form of adverse credit action, lower credit score, out-of-pocket expenses, invasion of privacy, loss of time and emotional distress.

79. At all times pertinent hereto, the defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the defendants herein.

80. At all times pertinent hereto, the conduct of the defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

81. The defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious and distinct injuries to Plaintiff that are outlined more fully above and, as a result, the defendants are liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief as may be permitted by law for their violations of federal law.

**COUNT ONE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**(Against Sam's Club)**

82. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

83. Sam's Club willfully failed to comply with the requirements of the FCRA, including Section 1681b, because, *inter alia*, it obtained Mr. Roberts' credit report without a permissible purpose. Sam's Club knew, prior to submitting a credit application in Plaintiff's name to Synchrony that Mr. Roberts did not authorize the application for credit. Notwithstanding, Sam's Club submitted a credit application in Mr. Roberts' name to Synchrony Bank, which and caused the subject inquiry to be made on Plaintiff's Trans Union file.

84. Alternatively, Sam's Club negligently failed to comply with the requirements of the FCRA, including Section 1681b.

85. As a result of Sam's Club's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive, and statutory damages, in an amount to be determined by the jury.

**COUNT TWO – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**(Against Trans Union)**

86. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

87. Trans Union willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1, and i, because, *inter alia*, Trans Union ignored the plain language of the FCRA's mandate to delete or reinvestigate any disputed item of information in Mr. Roberts' file and after receipt of no less than three of his disputes. Trans Union prepared no less than seven consumer reports concerning Plaintiff that included the inaccurate information and that were prepared after receipt of Plaintiff's disputes. Moreover, Trans Union knew Plaintiff claimed to be a fraud victim, yet failed to provide him with his credit file after no less than three requests.

88. As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive, and statutory damages, in an amount to be determined by the jury.

## JURY DEMAND

89. Plaintiff requests a jury trial on all claims.

## PRAYER

Wherefore, Plaintiff prays for judgment against the defendants as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and
4. Attorneys' fees and costs.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

                        Respectfully submitted,

                        ***/s/ Micah S. Adkins***
                        Micah S. Adkins
                        (Attorney-in-Charge)
                        TX BAR NO. 24088777
                        S.D. TX BAR NO. 2338097
                        **THE ADKINS FIRM, P.C.**
                        One Lincoln Centre
                        5400 Lyndon B. Johnson Fwy., Suite 1200
                        Dallas, Texas 75240
                        (214) 974.4030 Main Telephone
                        (615) 370.4099 Direct Telephone
                        MicahAdkins@ItsYourCreditReport.com
                        *COUNSEL FOR PLAINTIFF*
                        *JASON FLORENCIO ROBERTS*